[Finch v. The State.]

# Finch v. The State.

## Indictment for Manslaughter.

1. *Competency of grand juror as petit juror.*—A member of the grand jury by which the indictment was found, is incompetent to serve as a petit juror, and may be challenged for cause by the State, though the objection has been waived by the defendant.

2. *Relevancy of evidence as to weapon used.*—It being shown that the deceased was killed by being cut with a knife, it is competent for the prosecution to prove that the defendant, a few hours before the difficulty, borrowed a knife, which the lender never saw afterwards, and to prove the description of it.

3. *Former difficulty between deceased and defendant; admission of evidence against one of two defenants.*—A former difficulty between deceased and one of the defendants, is admissible evidence against the latter, as tending to show malice; and being offered and admitted against him only, his co-defendant can not complain of its admission.

4. *Motion to discharge defendant; error without injury in refusal.*—The refusal of the court to discharge the defendant on motion, because a *prima facie* case has not been made out against him, is, at most, error without injury, when the record shows that the necessary evidence was afterwards introduced.

5. *Charge as to self-defense, ignoring duty to retreat.*—A charge asked in a criminal case, invoking the doctrine of self-defense, but ignoring the duty to retreat, cast by law on the defendant, if he could safely and conveniently do so without putting himself apparently at probable disadvantage, is properly refused.

6. *Charge limiting duty to retreat.*—A charge asked, restricting the duty to retreat because it involved the necessity of turning loose defendant's mule, by which he was standing at the time, is properly refused.

7. *Charge as to credibility of confessions.*—Confessions made by one of the defendants, both while drunk and while sober, being in evidence before the jury, and being inconsistent with each other, a charge asked, instructing the jury to believe the latter in preference to the former, is properly refused.

8. *Charge as to belief of impending peril.*—A charge asked, asserting the defendant's right to strike in self-defense, if he honestly believed there was great peril to life or limb, not requiring that the belief should be reasonable, or based on reasonable grounds, is properly refused

9 *Charge on part of evidence.*—A charge asked, basing the right to an acquittal on the testimony of the defendant himself, and ignoring the conflicting testimony of other witnesses, is properly refused.

Appeal from Fayette circuit court.

Tried before the Hon. S. H. Sprott.

At the spring term, 1885, of the circuit court of Fayette county, Villa Finch, the appellant, and Rube South, were jointly indicted for manslaughter in the first degree, alleged to have been committed by them in the killing of James

Lindsay. On the trial, which took place at said term, the jury found the appellant, Finch, guilty as charged in the indictment, but as to said Rube South, being unable to agree, a mistrial was entered, and the jury discharged. On this point, the bill of exceptions states, "The jury, after having once before returned into court, came in, and the judge asked, if they had agreed upon a verdict; the foreman answered, 'No, sir,' and, after pausing a moment, 'No further than we had before.' The counsel for Finch then objected to the reception of the verdict. Whereupon the court said, 'I will propound the question once more, have you agreed upon a verdict?' To which the foreman of the jury answered, 'We have agreed as to *one* of the defendants.' The solicitor then moved the court to receive the verdict agreed upon, as to the defendant so agreed upon. To which Finch objected; but the court overruled the objection and directed the clerk to receive the verdict, which was as follows: 'We, the jury, find the defendant, Finch, guilty as charged in the indictment, and sentence him to imprisonment in the penitentiary for nine years.' To all of which the defendant, Finch, excepted. The court then asked the jury, if they had agreed as to the other defendant, and the foreman answered, 'No, and there is no prospect of an agreement.' The court, then, upon the motion of the solicitor and the consent of South, the other defendant, discharged the jury. To which action of the court, Finch objected; the court overruled the objection, and Finch excepted. This was done at 12 m. on Saturday, twelve hours before the expiration of the term."

In empanneling the jury to try the case, the name of W. E. Julian was drawn. Julian had been a member of the grand jury which had indicted Villa Finch for the same offense at a term of the court previous to the one at which the present indictment had been found. Counsel for the defense offered to waive this objection and take Julian as a juror. The solicitor replied that he did not think it a matter as to which the defense could make a binding waiver, and that he would object to and excuse said Julian. The court, thereupon, ordered Julian to stand aside, challenged by the State for cause. The said Julian had not been sworn. To this action of the court the defendants excepted.

Ruf. Sanford, a witness for the State, testified, in answer to a question by the solicitor, that he loaned Finch a knife, while at the depot, on the day of the difficulty, sometime before the killing, and that he had not seen the knife since. The solicitor then asked the witness to describe the knife. The defendants objected to this question, the court overruled the objection, and they excepted.

[Finch v. The State.]

Glenn Thornton, a witness for the State, testified that, on the evening of the killing, while at the depot the defendant, South, invited witness and the deceased, James Lindsay, to drink with him; that deceased declined, saying that he had drank enough; but witness accepted the invitation and went into the saloon with South to get the drinks, deceased remaining outside, and South then said something about having cut deceased in Texas, and that deceased needn't be too smart, or something to that effect. The court here instructed the jury, that the remarks of defendant, South, were not admissible and were not to be considered by them as against defendant, Finch, and that they were only admissible as against South. The defendants objected to the testimony of Thornton, which referred to South's declaration as to the cutting in Texas, but the court, again cautioning the jury, that this testimony was only to be considered as against South, overruled the objections, and defendants excepted.

The evidence for the State tended to show that, on the night of the killing, at the house of deceased, South, while very drunk and talking incoherently, stated that he went up to Finch and deceased, while fighting, and drew his knife to help Finch, but did not as Finch was getting the better of deceased; but afterwards, when sober, South made different statements as to this matter.

When the State, after introducing its evidence in chief, announced that it would rest, appellant, Finch, moved the court to discharge him, on the ground that the State had not made out a *prima facie* case against him. The court overruled the objection, and Finch excepted.

As this court holds that "the subsequent evidence supplemented this defect, if it existed," it is not necessary to set out the State's evidence in full up to the time it rested.

When the State rested, South introduced one Joe Henry as a witness in his behalf, Finch's counsel saying that Henry was not introduced for Finch, and, after Henry, several witnesses were introduced, as the bill of exceptions states, by the "defendants," and then both Finch and South testified as witnesses for the defense, and the testimony of all these witnesses, taken together, tended to show that Finch, South and Lindsay, the deceased, had been drinking together on the day of the killing at a depot or railroad station, and in the evening started home together, Finch lying in the wagon asleep and drunk when they started, and up to the time of the difficulty they had been apparently on good terms; that the killing occurred, after they had gone some distance on their way home, in the public road and at a place where

there was nothing to prevent retreat from an assailant in any direction; that at the time the difficulty commenced, and the killing was done, no one was present but these three, and Finch and deceased were riding side by side, behind a wagon driven by South, and deceased (according to the testimony of Finch) asked Finch, "why do you work with such a man as South? He won't pay you," and Finch replied, "I would rather work with a man who does not pay than a man who has nothing to pay with;" that Finch was then working with South, but had before that worked with deceased, who had settled with Finch satisfactorily; that deceased became angry at Finch's reply and cursed Finch and swore he would whip him, and took hold of Finch as he was riding by him and pulled him; that Finch endeavored to pacify deceased and told him that he (Finch) meant nothing by the above reply and was not able or willing to fight deceased; that, finally, when deceased was about to pull Finch off his mule, Finch told deceased that if nothing else would do him and he would not pull Finch off, that he would get down, but did not want to fight deceased; that, thereupon, deceased turned Finch loose, and Finch got down on the opposite side of his mule from deceased and deceased got down on the opposite side of his mule from Finch; that South, seeing this from the wagon, said to them, "quit your foolishness or I'll whip you both," and Finch said that he did not want to fight; that as soon as deceased had dismounted he went to the road-side and cut a stick, and South went to the other side of the road and cut a stick, intending (according to his testimony) to get between them, and again told them to quit their foolishness or he would whip them both; that deceased then rushed upon Finch in an angry, furious manner, with the stick in one hand and a knife in the other, cursing Finch and swearing that he would kill him, and Finch, at this time, was standing holding his mule; that deceased struck Finch three times over the head with the stick, and after that Finch (thinking, according to his own testimony, that deceased would kill him) commenced cutting deceased, cutting him the first time in the neck; that South then ran up and, pushing deceased aside, got between the combatants, and Finch kept cutting deceased and deceased kept striking Finch, over and around South; that, finally, South got hold of Finch and held him, and deceased backed off a few yards and, sinking down, soon died; that just before deceased sank down on the ground and while South was holding Finch, who was struggling to get loose, the witness, Joe Henry, came up; that Finch then approached said Henry

[Finch v. The State.]

in a threatening manner, as if intending to attack him, but Henry got out of the way; and Finch, at this time, was raving and did not seem to know what he was doing; that Finch had a bruise on the right side of the face, one in the upper part of the forehead, where the skin was cut or mashed for an inch or more, and a longer wound on the top of his head and the blood was running over his face; that the said Joe Henry, after Finch had seemed to come to himself, went, at the request of South for help, and, on returning with others, found the deceased lying as he had left him, but Finch had disappeared, and South, in reply to the question, where Finch was, said, "I told him to get and keep a getting."

The foregoing evidence, as to what brought on the difficulty and what occurred at the time of the killing, is based upon the testimony of Finch and South alone, no one else being present but the deceased.

The court, at the request of the State, gave the following charge: "If the deceased is the assailant, the party assailed must retreat, unless retreat will endanger his safety, and must refrain from taking life, if there is any other reasonable mode of escape." Finch excepted to this charge.

The following charge was given for the State: "If the jury is satisfied beyond a reasonable doubt, from the evidence, that James Lindsay and Villa Finch were engaged in a mutual quarrel, and Lindsay took hold of Finch as they were riding along and dared Finch to get down, and, if Villa Finch said 'I do not want to fight you, but, if nothing else will do you, I will get down,' and if they both got down from their mules, one on one side and the other on the other side, and, if Lindsay walked a few steps to cut him a stick and did cut him a stick, and in the meantime Villa Finch stood still, looking at Lindsay, and if Lindsay advanced on Villa Finch, cursing him and swearing that he would kill him, or whip him, and if Villa Finch stood still, expecting Lindsay to strike, and during this time Villa Finch drew his knife and had it ready and waited there until Lindsay struck him over the head three times or more, and then he cut Lindsay and killed him, he would be guilty as charged in the indictment, and the jury must so find him." Finch excepted to this charge.

The court gave the following charge for the State:

5. "When the law says a man may pursue his adversary and take his life, if it is necessary, that principle of law will not excuse Finch for taking the life of Lindsay, if with reasonable safety to himself he could have avoided entering into the fight, or have escaped by retreat, and if Finch stood

still, when he could have retreated with reasonable safety, and waited until Lindsay cut a stick and came up to him and began to beat him with it, and having good reason to believe that Lindsay intended to strike him with it, and he then began to fight and cut Lindsay and killed him, he would be guilty and the jury must so find by their verdict, although he may have believed it was neeessary to take the life of Lindsay at the time he cut him."

To this charge Finch excepted.

The court gave the following charge for the State :

6. "If the evidence satisfies the jury, beyond a reasonable doubt, that Villa Finch cut and killed Lindsay, when he could have with reasonable safety avoided the difficulty and have escaped by retreat, but stood still until Lindsay cut a stick and came to him and commenced to beat him over the head, and he reasonably expected Lindsay to strike him, and he got his knife ready, and after Lindsay struck him three or more times, commenced to cut Lindsay and did intentionally cut Lindsay and kill him, Finch would be guilty of manslaughter, although he did not intend to kill Lindsay, and if South was present and heard them quarreling and reasonably believed they were going to fight, and with this knowledge he started to them to separate them, but, before he got to them, they began to fight, Lindsay using the stick and Finch the knife, and while the fight was progressing, South aided or encouraged Finch in the fight, and as the fight progressed, Finch cut and killed Lindsay, then South would be guilty of manslaughter, although he may not have anticipated death from the cutting by Finch."

To this charge Finch excepted.

The court gave the following charge for the State :

7. "The jury can look to the statements of South, that he went up to the parties and had out his knife and intended to help Finch, if Finch had not the advantage, if they are satisfied beyond a reasonable doubt, that he made these statements, in determining whether he aided or encouraged Finch in the fight."

To this charge Finch excepted.

The court gave the following charge for the State :

8. "If, when Finch got down off his mule, he had reasonable ground to believe that Lindsay was going to attack him, and if he (Finch) could then have gone off and retreated thence with reasonable safety to himself, it was his duty to do so, and if he failed or refused to do so, he can not plead self-defense."

To this charge Finch excepted.

Finch then asked the court to give the following charge :

[Finch v. The State.]

1. "If the jury believe from the evidence, that the defendant, Finch, was reasonably free from fault in bringing on the difficulty, and that the deceased advanced on said defendant, with a knife in one hand and a stick in the other, declaring that he would kill the defendant, and that said defendant reasonably believed that the deceased was about to assault him with intent to kill, then said defendant was not bound to retreat, but could stand his ground, and, if necessary, kill his adversary."

The court refused this charge and Finch excepted.

Finch asked the following charge :

2. "If the jury believe from the evidence, that the defendant, Finch, did not bring on the difficulty and that he was standing by and holding his mule, and that the deceased rushed upon him in a furious manner, threatening to kill him, with a stick in one hand and a knife in the other, the said defendant was not bound to leave his mule loose and retreat, but had the right to remain where he was standing and strike in defense of his person, and kill his adversary, if he believed reasonably from the circumstances that he could not otherwise escape great bodily harm with safety to himself."

The court refused this charge and Finch excepted.

Defendant, South, asked the court to give the following charge :

3. "If the jury believe from the evidence, that defendant, South, while very drunk and talking incoherently, made statements about the killing of Lindsay, and while sober, made statements which were different about the same matter, then they are to believe the statements made when he was sober in preference to those made when he was drunk, in considering those statements independently of their testimony."

The court refused this charge and Finch excepted.

Finch asked the following charge :

4. "If the defendant, Finch, was so drunken and crazed with liquor at the time the fatal cutting was done, that he was unconscious of what he was doing, then the jury must acquit, provided they further believe, that he, said Finch, became in such condition without any intention or purpose or expectation of having a difficulty with deceased."

The court refused this charge and Finch excepted.

Finch asked the court to give the following charge :

5. "If the jury believe from the evidence, that the defendant, Finch, did not bring on the difficulty, and that he was being assaulted by the deceased with a stick, and believed he was in danger of having great bodily harm inflicted upon him by the deceased, and if the jury further

[Finch v. The State.]

believe, from the appearances before him, and that he believed that he could not safely escape the danger, then he had the legal right to strike in self-defense, and continue to strike, with his knife or otherwise, until he believed himself out of the peril, even to the slaying of his adversary."

The court refused this charge and Finch excepted.

Finch asked the following charge :

6. " If the jury believe the testimony of the defendants, Finch and South, then they must acquit the said Finch."

The court refused this charge and Finch excepted.

Finch asked the following charge, which the court refused, and Finch excepted :

7. " If the jury believe from the evidence, that Lindsay, the deceased, was the aggressor in the fight in which the deadly blow was given, and that Finch stood on the defensive, and did not use his knife until Lindsay had advanced on him with the stick, and had commenced beating him with the stick, and that Finch believed he was in imminent peril of his life or great bodily harm, then Finch had a right to strike in his defense and continue to strike until he was relieved from the peril or danger, unless the jury find, also, that Finch was not reasonably without fault."

W. R. SMITH, for appellant.

T. N. McCLELLAN, Attorney-General, for the State.—That a juror summoned for the trial was a member of the grand jury which returned the indictment, is good ground for challenge—*Birdsong v. State*, 47 Ala. 68—and the challenge may be interposed at any time before the juror is sworn.—*Murray v. State*, 48 Ala. 675. The reasons a party may have for resorting to or waiving a challenge are immaterial. The only questions are whether the cause is sufficient, and whether the challenge is timely. It is always competent to show preparation for crime, and that the defendant had the means necessary to commit the crime charged. On this principle, the evidence of defendant's possession of a knife was properly admitted. South was on trial with appellant. The evidence of Thornton, which is excepted to, went to show ill-feeling between South and deceased. This may be shown, as here, by proof of former difficulty—*Garrett v. State*, 76 Ala. 18 ; *McAnally v. State*, 74 Ala. 9—and a former difficulty may, like any other relevant fact, be shown by the declarations of the accused. *Evans v. State*, 62 Ala. 6. This evidence was competent against South and could not be excluded merely because it

[Finch v. The State.]

was irrelevant against Finch.—1 Brick. Dig. 810, §§ 98 99; *Lawson et al. v. State*, 20 Ala. 65. The motion to discharge Finch was, in effect, a demurrer to the evidence, which, in criminal jurisprudence, can only be interposed by consent— no consent is shown, and the motion was properly overruled. *Martin v. State*, 60 Ala. 240. It may be that this motion was predicated on the absence of proof of venue, but the bill of exceptions does not purport to set out all the evidence, and it will be presumed here that such proof was made.—*Hubbard v. State*, 72 Ala. 164. Charges 1, 2, 3, 4 and 5, given at the request of the State, are correct expositions of the doctrine of aggression on the part of the defendant—3 Brick. Dig. 221, § 600—or of retreat when practicable—*Story v. State*, 71 Ala. 529—or of the principle that mere willingness to fight renders the party, if death ensues, guilty of manslaughter.—*Cates v. State*, 50 Ala. 166. The first charge requested by defendant, Finch, was misleading, and incorrectly states the doctrine of retreat. The true rule is that a person about to be assaulted must retreat, unless his danger will apparently be *increased* by retreat.—*Story v. State*, 71 Ala. 327. The evidence shows defendant to have had a perfectly safe retreat open to him, and, consequently, that there was no necessity for his standing his ground and taking life. All those charges, therefore, requested by Finch, which are predicated upon the existence of such necessity, are abstract. The charge requested by South had no bearing on appellant's guilt or innocence, and its refusal did not prejudice Finch. This charge is also bad, for the reason that it indulges the violent presumption—whether of law or fact—that a man will come nearer telling the truth when sober than when drunk, and denies the right of the jury to pass upon evidence. The other charges requested by defendant palpably violate one or another well settled principle of criminal law, and were properly refused.

SOMERVILLE, J.—The juror, Julian, having been a member of the grand jury which found the indictment for the offense charged, was properly challenged for cause. *Birdsong v. State*, 47 Ala. 68.

2. It being made to appear, by the tendency of the evidence, that the deceased was killed by being cut with a knife, it was competent to show that the defendant had borrowed a knife from the witness, Sanford, a short time before the difficulty, as an act of preparation for an expected difficulty; and the description of the instrument was equally relevant.

4

3. The confession of the defendant, South, as to having had a previous difficulty with deceased in Texas, was clearly admissible against him to prove malice and motive for the killing.—*Garrett v. State*, 76 Ala. 18. As the court admitted this evidence against South only, the appellant, Finch, who alone takes this appeal, could not object to this ruling as at all prejudicial to himself.

4. We need not consider the assignment of error, based on the refusal of the court to discharge the appellant upon the alleged ground that a *prima facie* case had not been made out against him when the State had closed the evidence for the prosecution. The subsequent evidence supplemented this defect, if it existed, and the action of the court, if error, was without injury.

5. The first charge requested by the defendant, Finch, was properly refused, because it ignored the duty which the law imposed upon him to retreat when attacked by deceased, provided he could have safely and conveniently done so without putting himself at apparently a probable disadvantage.—*Story's Case*, 71 Ala. 329; *DeArman's Case*, 77 Ala. 10; *Tesney's Case*, 77 Ala. 33.

6. The eighth charge given by the court, at the request of the solicitor, was free from error, and the second charge requested by the defendant, bearing on the duty of the defendant to retreat, was properly refused. The mere fact that the act of retreating would have compelled defendant to let loose the mule which he was holding, could not relieve him of this duty. That would be a trivial inconvenience when weighed in the balance against the alternative and grave necessity of taking human life.

7. There is no rule of law which compels jurors to believe confessions made by a defendant when he is sober in preference to those of a contradictory character, made when drunk. The relative credibility of the statements is a question for the jury. The third charge requested by the defendant, South, was erroneous, and was properly refused. The appellant, Finch, moreover, could not be injured by this charge, even if it were erroneous.

8. It is not every belief, however honest, which a defendant may entertain as to the existence of great peril to life or limb that will justify his taking life. But it must be a *reasonable* belief, or one based on reasonable grounds. The fifth charge requested by the appellant was erroneous in failing to make this distinction.

9. The sixth charge was misleading in seeking to separate the testimony of the defendants from the conflicting testimony of other witnesses bearing on the same facts, so as to

[Hoober v. The State.]

ask a verdict of acquittal based on their statements alone and unqualified. In ascertaining the truth of any fact the jury should look to the whole evidence bearing on such fact, and not to a part only.—*Jordan v. Picket*, 78 Ala. 331. This principle does not of course preclude the defendant from asking any proper charge based on his own phase of the case as established by the entire evidence.

The other rulings of the court are without error, and the judgment must be affirmed.