# McMurphy *v.* The State.

## *Murder.*

Decided April 11, 1912.   58 South. 748.)

1. *Evidence; Weight and Sufficiency; Court and Jury.*—The relevancy of evidence is to be determined by the court, but its weight is ordinarily for the jury.

2. *Homicide; Evidence; Motive.*—Where the defendant admitted the homicide but claimed to have acted in self defense, evidence that the defendant, then an unmarried man, had asked the wife of the deceased to marry him, and that when she refused he said that whoever she married would do her no good, was admissible on the question of a motive.

3. *Same; Condition of Parties.*—Where the evidence tended to show that between nine and· ten o'clock at night the deceased climbed over into defendant's yard and acted in a boisterous and indecent manner until killed, evidence that thirty minutes before the homicide, the deceased was drunk asleep on a railroad near defendant's house, was admissible.

4. *Same; Degree; Reduction; Provocation.*—However offensive words may be they cannot reduce a homicide provoked by them to manslaughter; a homicide committed in the heat of blood, provoked by mere opprobrious words, is at least murder in the second degree.

5. *Same; Instructions.*—A charge asserting that if the jury found that the deceased was a man of violent character, and had threatened defendant's life, of which defendant was aware, and if when killed, he was approaching the defendant in an angry threatening manner, and such angry threatening manner *calculated to produce* death or great bodily harm, then the defendant might, etc., was bad and properly refused.

6. *Same; Issues and Evidence.*—Where, at his preliminary trial, defendant had deposed that deceased was advancing towards him with his hand in a position as if to strike, and on the final trial testified that deceased had not approached as if to strike him, but as if he was going to get his pistol, a charge *asserting that if* deceased approached defendant with an open hand free from any weapon as if to strike him, and was then shot by defendant, they should convict, was not objectionable when considered in connection with the evidence.

7. *Charge of Court; Covered by Those Given.*—It is not error to refuse instructions substantially covered by written instructions given.

8. *Same; Construction.*—A charge must be construed as a whole and if, when so construed, it correctly states the law, as applied to the facts of the case, the fact that some sentence by itself is subject to criticism, does not render the charge bad.

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

Alexander McMurphy was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The following charges were refused to the defendant: (2) "The court charges the jury that danger that will excuse one from killing another need not be real or actual. It may now be known that all the appearances of danger were false, and that La Fayette James never intended to do defendant any harm, and that he did not have a pistol; yet if the jury believe, from all the evidence in the case, that the appearance of danger surrounding the defendant at the time was such as to produce the reasonable belief in the mind of the defendant that his life was in danger, or that he was about to suffer great bodily harm, and that there was no other reasonable means at the time open to the defendant to avoid the danger, but by taking James' life, the defendant being without fault at the time, the law holds him harmless." (3) "The court charges the jury that

if the defendant, with no intention of bringing on a difficulty, approached the deceased in a peaceable manner, and the deceased made the first hostile demonstration, by drawing or attempting to draw a weapon, or by appearing to do so, and if the accused was in such proximity to the deceased as to render it hazardous to attempt flight, then the law did not require the deceased to endanger his safety by attempting flight." (4) "The court charges the jury that if they find from the evidence that the deceased was a man of violent, turbulent character, that he made threats against the life of the defendant, which had been communicated to him, and if at the time of the difficulty he was approaching the defendant in an angry, threatening manner, and such angry, threatening manner calculated to produce death or great bodily harm, then I charge you that under such circumstances a demonstration or overt act made by such an one may afford much stronger evidence that the life or limb of defendant was in imminent peril than if performed or made by one of an opposite character or disposition, and it might reasonably justify a resort to more prompt measures of self-preservation."

McClelland & Ratcliffe, for appellant. The court erred in permitting it to be shown that the defendant had said to the wife of the deceased prior to their marriage that if she did not marry defendant, whoever she married would do her no good.—*Reid v. The State,* 68 Ala. 392; *King v. The State,* 89 Ala. 149; *Knight v. The State,* 160 Ala. 65. The fact that deceased was drunk asleep on the track, was not relevant.—*Kennedy v. The State,* 37 South. 90. The court erred in its oral charge as to opprobrious words and epithets.—*Scales v. The State,* 96 Ala. 69; *Eiland v. The State,* 52 Ala. 322. The court erred in its charge relative to the manner of deceased's approach.—*Edgar v. The State,* 43 Ala. 312;

[McMurphy v. The State.]

50 Ala. 149. Counsel discussed charges refused, but without citation of authority.

R. C. BRICKELL, Attorney General, and W. L. MAR-TIN, Assistant Attorney General, for the State. While the State may not impeach its own witnesses, it may adduce testimony differing from their version.—*Jones v. State,* 115 Ala. 67. It is competent to show the feeling existing between deceased and defendant.—*Monteith v. The State,* 161 Ala. 18. Questions answered in the negative are never injurious.—*Phoenix Co. v. Moog,* 78 Ala. 284; *Billingsley v. The State,* 85 Ala. 325. Any threat is competent to show ill will or ill feeling, and it is a matter for the jury to determine to whom it referred.—*Knight v. The State,* 160 Ala. 58; *Williams v. The State,* 147 Ala. 10. Objections interposed after the questions had been answered come too late.—*Washington v. The State,* 156 Ala. 58; *Downey v. The State,* 115 Ala. 108. The court's oral charge was correct, as mere words cannot reduce murder to manslaughter.—*Watson v. State,* 82 Ala. 10; *Compton v. The State,* 110 Ala. 24. A mere blow with the fist is not sufficient to place a defendant in such peril as will authorize him to strike to kill.—*Reese v. The State,* 90 Ala. 624; *Jones v. The State,* 96 Ala. 102; *Martin v. The State,* 119 Ala. 1. The court properly refused charges requested.—*Finch v. The State,* 81 Ala. 41; *Shepherd's case,* 135 Ala. 9.

DE GRAFFENRIED, J.—1. The relevancy of that part of the evidence of the widow of the deceased tending to show that prior to her marriage to the deceased the defendant, then an unmarried man, had asked her hand in marriage, and that at the time of such refusal the defendant said that "whoever she married would do her no good," is seriously challenged by counsel for defendant in their brief. The relevancy of evidence is

for the court. Its weight, if any it possesses, is, ordinarily, for the jury, and the jury alone. "'When the offense is against the person or property, the relations existing between the accused and the injured person prior to and at the time of the injury, in conjunction with other circumstances, may disclose a motive either of gain or revenge on the part of the accused which will aid in identifying him as the wrongdoer."—*Hudson v. State,* 61 Ala. 333. "They are resorted to as elements of evidence, not from any supposed necessity of accounting for or explaining the reason of a criminal act which has been clearly proved and fixed upon the accused, however strange and inexplicable such act itself may appear, but from the important aid they always render in completing the proof of the commission of such act by the party charged in cases where it might otherwise be in doubt."—Burrill on Circumstantial Evidence, p. 296; *Hudson v. State, supra.* "The force of the fact time may diminish, but does not entirely destroy. Or if new and amicable relations have been formed—or any other change of circumstances which may diminish the probative force of the fact can be shown—the fact must be taken in connection with these, and it may be shorn of all practical value as evidence without affecting its admissibility."—*Hudson v. State, supra.* While the Supreme Court in the above opinion was dealing with a case in which the defendant had been convicted by the jury of arson upon circumstantial evidence, and the question was whether certain ancient difficulties between the defendant and the owner of the property burned were relevant as tending to establish a motive on the part of the defendant for committing the crime, the quoted language is controlling upon the question now before us. In the instant case the defendant was indicted for murder in the second

degree. One of the questions, therefore, before the jury, was whether the defendant had a motive for killing the deceased. The defendant admitted the killing, but claimed that he acted in self-defense. The state, on the other hand, claimed that the killing was done unlawfully and maliciously. The question, therefore, as to whether the defendant, in the instant case, had a motive for the commission of the offense, is governed by the identical rules declared by the Supreme Court in the above case of *Hudson v. State,* which since its rendition has been frequently cited and quoted with approval.— *Gray v. State,* 63 Ala. 73; *Long v. State,* 96 Ala. 43, 5 South. 443; *Spraggins v. State,* 139 Ala. 103, 35 South. 1000; *Walker v. State,* 85 Ala. 7, 4 South. 686, 7 Am. St. Rep. 17. In the instant case the deceased came within the direct scope of the alleged threat, for he married the woman by whom the defendant was refused in marriage, and the defendant killed the deceased. While the marriage of the defendant to another woman three years before the homicide—a woman with whom he was living as his wife at the time of the homicide— and while the deceased had been married to the woman to whom the alleged threat was made for five months before the homicide, in short, while all the facts and circumstances surrounding the defendant at the time of the homicide may have "shorn this evidence of all practical value as evidence," its admissibility was not, under the rules laid down by the Supreme Court in the above case of *Hudson v. State,* thereby affected.—*Walker v. State, supra.*

2. The evidence both for the state and for the defendant tended to show that the deceased was shot by the defendant while in the defendant's yard. The evidence further tended to show that the deceased went into the defendant's premises in an unusual way—by climbing

over his fence—and at an unusual time—between 9 and 10 o'clock at night—and that he acted in a boisterous and indecent manner from the time he went on the defendant's premises until he was killed. All the evidence tended to show that the deceased was drinking at the time, and there was some evidence tending to show that his drunken condition must have been so apparent that the defendant must have known that the behavior of the deceased was due entirely to his drunken condition, and that he was in a state of mental imbecility on account of such drunken condition. We are therefore of the opinion that the court committed no error in permitting testimony tending to show that 30 minutes before the homicide the deceased was "drunk asleep" on a railroad near defendant's house.—*White v. State*, 103 Ala. 72, 16 South. 63.

3. Taken in connection with the other parts of the oral charge of the court which were not excepted to, the court committed no error in charging the jury, under the evidence as disclosed by this record, orally as follows: "And it matters not how opprobrious these words are, and how the deceased cursed. The fact in itself, whilst he might have struck him down with his hand, in no conditions would those things alone justify the taking of human life. They reduce the grade of the offense to murder in the second degree, the crime for which this man is indicted."

In the quoted portion of the oral charge of the court, the court simply told the jury that under the law mere words, however offensive, cannot reduce a homicide provoked by such words alone to manslaughter, but that a homicide committed in the heat of blood provoked by mere opprobrious words alone is at the least murder in the second degree. Such is the law of this state.—*Compton v. State*, 110 Ala. 24, 20 South. 119.

It appears from the evidence in this case that there was a preliminary trial, and that on that trial the evidence of the witnesses was taken down in the form of depositions, and that each witness signed his deposition when so taken. The defendant was examined as a witness on that trial, his deposition was subscribed by him, and said deposition was introduced as evidence for the purposes of contradiction. The said deposition shows that on the preliminary trial the defendant testified, among other things, as follows: "I was about four feet from the gate when the shot was fired. He was advancing towards me. His hand was up in a position like he wanted to hit me. His hands were not on the gate posts. He was just inside the gate. At the time I shot him he had his right arm up, and I couldn't tell what he had in his left." On the final trial the defendant testified, among other things, as follows: "I don't think that I testified on the preliminary 'like he was going to hit me.' I have no recollection of saying 'hit me.' I tried to say he had his hand like he was going to get his pistol. I don't recollect saying that his hand was up in a position like he was going to hit me when I shot him. No, sir; I don't think that I testified on the preliminary that Fate James had his right arm up, but I couldn't tell what he had in his left." In view of the above conflict which existed between the testimony of the defendant which the evidence tended to show he gave on his preliminary trial and his testimony on the final trial, we do not think that the defendant's objections to sub-divisions 2 and 3 of the oral charge of the court were well taken. It appears that during his oral charge the trial judge stated to the jury the following, to which the defendant reserved an exception as sub-division 2: "If this man [the deceased] approached this man [the defendant] there at the time with his fist up

to strike him and he shot him, it is your sworn duty to convict him. A blow from the hand never, under ordinary circumstances, justifies the use of a deadly weapon." After the defendant had objected to this quoted portion of the court's charge, the court further said to the jury as follows: "You may have misunderstood me, gentlemen, in that part of the charge which I charged you if he approached the defendant, as contended by the state in this deposition, with his hand to strike him, that you must find him guilty if that is true. I mean with an open hand, free from any weapon." The defendant excepted to this portion of the court's oral charge as subdivision No. 3. The oral charge of the court must be construed as a whole. Each of its sentences is intended to be considered as forming a part of the charge in its entirety, and no sentence is intended to be considered as disassociated from the other parts of the charge. When an oral charge is so considered and construed, if it correctly states the law as applied to the facts of the case, no one can complain because some sentence by itself may be subject to criticism.— *Williams v. State*, 83 Ala. 68, 3 South. 743. There is nothing in the objections taken by the defendent to the above-quoted portions of the oral charge of the court, when those portions of the charge are considered in connection with the rest of the oral charge of the court and in connection with the evidence in the case.

4. Charge 2 requested by the defendant in writing was covered by charges "a," "c," and "d" given to the jury at the written request of the defendant.

5. The defendant undertook, in making his defense, to show that he shot the deceased while trying to get him, while in an excited condition due to the influence of liquor, out of his (defendant's) house and yard, and that the shooting took place while the defendant was

within the curtilage of his dwelling, and in defense of himself from a sudden unprovoked and apparently dangerous assault at the hands of the deceased. All of the evidence showed that the defendant fired the fatal shot while within the curtilage of his dwelling. Pretermitting the question as to whether charge 3, which the defendant requested the court in writing to give to the jury, was not properly refused upon other grounds (See *Finch v. State*, 81 Ala. 41, 1 South. 565, and *Shepherd's Case*, 135 Ala. 9, 33 South. 266), charge "d," given to the jury by the court at the written request of the defendant, placed the doctrine of retreat in its most favorable aspect under all of the facts of the case before the jury, and the court therefore committed no error of which the defendant can complain in refusing to give said charge 3 to the jury.

6. Charge 4 requested in writing by the defendant, which the court refused to give to the jury, was patently bad and was properly refused.

We have carefully considered all the questions presented by this record. It appears to us that the defendant received an impartial trial, and that the trial court in the conduct of the trial committed no error. The judgment of the court below is affirmed.

Affirmed.