88 So.2d 199

### Jesse BLACKBURN

v.

### STATE.

### 8 Div. 407.

Court of Appeals of Alabama.

Nov. 16, 1954.

Rehearing Denied March 15, 1955.

Mitchell & Poellnitz, Florence, for appellant.

Si Garrett, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

PRICE, Judge.

To an indictment charging him with robbery, defendant plead not guilty and not guilty by reason of insanity. His trial resulted in a verdict of guilty and a sentence of twenty years in the penitentiary.

The State's evidence was to the effect that Thomas Clyde Wright operated a Rooling Store for one W. N. Greenhill. On April 19, 1948, Mr. Wright drove the store over his regular route. He started up Crowell Hill, on the Allsboro Road, in Colbert County, after dark. At that time he had in his possession a billfold containing approximately $76 belonging to Mr. Greenhill and a billfold containing $51 of his own money. As he put his truck in "double low" he saw someone coming off the bank toward the road with something in his hand that looked like a gun. He remembered nothing further until he regained consciousness in a hospital two weeks later. At that time he had neither the billfolds nor the money.

Mr. and Mrs. Hubbard and J. C. James were on Crowell Hill and saw the Rooling Store stopped on the road. A maroon colored Buick, bearing an Illinois license plate, was parked by it. These witnesses heard a "rumbling noise," like the sounds of a struggle from inside the store. Mr. James testified two colored men got into the Buick and drove away. Mr. James and Mr. Hubbard armed themselves and returned to the scene about thirty minutes later. They found Mr. Wright at the rear of the store, trying to scotch it so it would not roll down the hill. He was badly beaten, dazed and "out on his feet." They found a bloodstained tire tool and two hats inside the store.

Deputy Sheriff Stanford arrived at Crowell Hill between 10:30 and 11:30 that night and found two hats and a tire tool and blood inside the store. The articles found by him were introduced in evidence.

Dr. Gary testified he examined Mr. Wright at the hospital on the night of the alleged robbery. He was unconscious and bleeding from the ears and nose. X-rays made later showed multiple linear fractures on the skull, caused by a blunt instrument used with great force.

At the time of the alleged crime appellant was a resident of Chicago, Illinois. About

a week prior thereto he came to Alabama in company with Dennis Thorne and Robert Howell for the purpose of burying his deceased brother. The trip was made in a maroon Buick with an Illinois tag. The prosecuting witness testified he had seen these men and the automobile at the home of Dennis Thorne's brother on the Allsboro Road. One of the men bought a package of cigarettes from him and paid for it with a twenty dollar bill. On April 16, 1948 appellant married Fanny Rogers in Iuka, Mississippi. There was a wedding party that night at Jack Thorne's house. The couple spent that night at Leon Fuqua's and the next afternoon appellant left with Howell and Dennis Thorne. The next time his bride saw him was in May, 1948, when he was in the Colbert County jail.

According to the State's evidence, on May 8, 1948, after appellant was arrested and brought to Colbert County from Gary, Indiana, he confessed the crime to deputy sheriff Stanford. The confession was reduced to writing and signed by appellant two days later. The confession was admitted in evidence as State's exhibit "A" on voir dire examination for the purpose of determining defendant's mental capacity at the time of making the confession. It was also admitted in evidence before the jury as State's exhibit "D." In the confession the defendant detailed the movements of the trio from the time they left Chicago until the night of the robbery; told of his marriage to Fanny Rogers; said there was a conspiracy between the three men to rob the driver of the Rooling Store, which defendant said he subsequently tried to prevent. He stated that at the time of the robbery, "I carried small wrench which I now identify as the one I used. Shirt I was wearing that night I identify as same which had blood on it and was washed out by Burneice Moore the night we spent in Nashville. The hat officers found in Rooling Store I identify it as the one Robert Hal was wearing at the time of the *robery*, but this hat belonged to me. I now have been presented with a heavy tire tool which officers said was found in Rooling Store, I identify it as the one Robert Hal used to hit the driver of the Rooling Store, three times

on the head." In the confession defendant stated he flagged the store down on the steep part of the hill. Robert Howell rushed up behind defendant as he stepped on the running board. After Robert Howell struck the driver defendant got the change from his right front pocket while Robert Howell was going through his other pockets. After leaving the scene defendant helped to count the money and received $28 as his share and he disposed of some checks that were in the billfolds.

For the defendant, Thomas J. Grace, a field examiner for the office of the Regional Attorney of the Veterans' Administration, identified certain records showing that at the time of the commission of the alleged crime defendant was a 25 year old negro man with a history of mental disorders. On July 1, 1944, at Drew Field, Florida, he was diagnosed as unfit for military service because of psychosis. The Report of Board of Medical Officers was that he had "recurrent periods of marked confusion and over-activity, assaultiveness with catatonic posturing, teeth grinding followed by severe headache and complete amnesia concerning his behavior, constitutes a threat to others when subject to such attacks," and recommended his transfer to a Veterans Administration facility for further treatment.

On September 8, 1944, appellant was admitted to a Veterans Administration hospital at Danville, Illinois, from Drew Field, with diagnosis of dementia praecox, simple type, and a history of hallucinations and defective judgment and insight. There, on September 11, 1944, he was given a diagnosis of "psychosis, manic depressive, manic phase." On February 14, 1948, the Danville Veterans Hospital placed defendant on a ten-day leave of absence with his sister. He failed to return at the end of ten days and was placed on a 90 day trial visit. On May 24, 1948, not having returned, he was formally discharged from the hospital. His diagnosis on discharge was schizophrenic reaction, paranoid type. The alleged offense occurred prior to the discharge from the hospital. Also a report of an examination by Dr. M. L. Moorer, neuropsychiatrist, April 22, 1949, with a diagnosis "Schizophrenic reaction, paranoid type. Insane,

incompetent and should be placed in insane hospital." And a rating sheet by the Veterans' Administration, showing defendant's rating to be, "Schizophrenic reaction, paranoid type, incompetent from 5–24–48."

The record discloses that after appellant's arrest he showed signs of insanity in the jail and was admitted to Searcy Hospital for observation and report under the provisions of Articles 1 and 2 of Title 15, Code 1940, on July 29, 1948, and remained there until November 12, 1952, when he was released into the custody of Colbert County authorities as sane and competent to stand trial.

On the trial defendant testified the signatures on the bottom of each page of the purported statement to deputy sheriff Stanford appeared to be his signatures but the statement was not true and he had no recollection of having made or signed it. He did not remember being questioned by the sheriff or his deputy and did not remember that anything in the statement took place. He testified he did not commit the offense charged. He also testified he did not remember being in Colbert County in 1948; did not remember being in jail there in 1948 and that he did not remember getting married.

Defendant introduced depositions of Drs. Tarwater and Rowe, which were also introduced on voir dire, and are commented upon further on in this opinion.

Appellant's counsel argue: "The errors which we primarily urge for reversal hinge upon the trial court's actions in dealing with the alleged written confessions and certain allegedly confessory statements of the appellant."

After proper predicate was laid the State offered the confession in evidence.

The defendant objected to the introduction of the confession because the corpus delicti had not been proven and because the defendant could be shown not to have had the mental capacity to be a witness on May 8, 1948.

The defendant, on voir dire, introduced depositions of Dr. Harry S. Rowe, assistant Superintendent of Searcy Hospital, and Dr. J. S. Tarwater, Superintendent of Alabama State Hospitals. The report of the lunacy commission appointed July 26, 1948, to investigate the sanity of defendant was attached as exhibit "B" to each of said depositions. This report was signed by Drs. Tarwater, Rowe and A. M. Richards, and recites in part:

"It is the opinion of each of us, and our opinion jointly and collectively, that the said Jesse Blackburn at the time of his admission to the Searcy Hospital on July 29, 1948, was insane and incompetent. During his stay in the hospital he has continued to exhibit abnormal thinking and abnormal behavior and it is our opinion that he is presently insane. From a study of his case and using information from several other mental hospitals where he has formerly been treated it is our further opinion that he was insane at the time of the commission of the crime for which he is charged."

Dr. Rowe stated in answer to interrogatories that defendant was suffering from schizophrenia of the paranoid type; in his opinion he was insane at the time of the commission of the crime.

Dr. Tarwater stated that the commission, from a study of the reports and the findings in the case, immediately after hospitalization, was of the opinion that defendant was mentally ill and incompetent during April 1948, and during the period from January 1, 1948 to July 29, 1948.

The State introduced the cross interrogatories of Drs. Rowe and Tarwater and the depositions of Dr. A. M. Richards, a staff physician at Searcy Hospital, and a member of the lunacy commission.

Dr. Rowe stated that at times while in the hospital defendant's thinking and behavior was normal, and that both his thinking and behavior were more normal than abnormal, and that he had lucid intervals.

Dr. Tarwater stated defendant exhibited abnormal thinking and abnormal behavior for several months after his admission to the hospital. In his opinion defendant was mentally incompetent on April

148

19, 1948, and was mentally ill and mentally incompetent on May 8, 1948.

Dr. Richards stated in answer to direct interrogatories that he, Dr. Tarwater and Dr. Rowe found, as stated in the report, that defendant was insane at the time of the commission of the crime for which he was charged. In answer to cross interrogatories he stated that defendant had been normal mentally since he first saw him; that at times his behavior was normal; his thinking and his behavior was more normal than abnormal; at times he was rational in his thinking and behavior; he did not think defendant had lucid intervals; his mental condition on April 19, 1948, was normal, and his mental condition on May 8, 1948, was good; that defendant did not have psychotic episodes at any time that he saw him.

Deputy Sheriff Stanford then testified for the State that he questioned defendant in the Colbert County jail on May 8, 1948, for five or six hours and returned after supper and continued the questioning. The greater part of the time he was alone with the defendant, but the Sheriff and deputy Bo Riner were present some of the time. Defendant answered questions like any normal person he has examined. He told his name, address, his past occupations and the date he left Chicago. The witness reduced the statement to writing and read it to defendant in the presence of the sheriff, Mr. Riner, and Mrs. Craig, the notary public, and the defendant signed it. There was nothing about defendant's appearance to indicate that he was a sick man. No threats or offers of reward were made to induce defendant to sign the statement.

The State again offered the confession as State's Exhibit "A" only for the purpose of the voir dire hearing. Defendant objected to its introduction because it was taken over a period of hours; it could not reflect the continuity of thought on the part of the witness; could not determine in any way his mental capacity to make the statement; it is otherwise shown to be involuntary; the corpus delicti has not been proven; the statement is incompetent and illegal, and by express statement of Mr. Stanford the state-

ment was put down in his words and not those of defendant. The court overruled the objection, stating that the confession was being received at that time only for the court's inspection on the question of whether it should be admitted later for the jury's consideration. Defendant duly excepted.

The jury returned to the courtroom and the State again laid a predicate for the introduction of the confession. On cross-examination deputy Stanford testified that on May 8, 1948, he talked with the defendant from 1:00 to 6:00 and from 7:00 until 10:00 or eleven that night. Most of the time they were in a room 4 X 6 or 6 X 8; part of the time the sheriff and another deputy were present; they might have worn their guns and badges; after staying in jail for some time defendant began to show signs of insanity. The witness also testified the defendant talked rationally and gave sensible answers at the time the confession was made. His eyes were clear and he did not appear to be nervous. The State then offered the confession in evidence as exhibit "D" to the witness' testimony. The court overruled defendant's objection and defendant excepted.

Appellant contends the facts testified to by the witness Stanford show that the confession was involuntary, and its admission before the jury was reversible error.

 There was no testimony tending to contradict the evidence on the part of the State that the confession was not induced by duress or promise. The fact that a confession was made while the maker was under arrest does not render it inadmissible. Johnson v. State, 242 Ala. 278, 5 So.2d 632. Nor is the confession rendered inadmissible by virtue of the fact that the officers to whom the confession was made were armed. McElroy v. State, 75 Ala. 9; Hornsby v. State, 94 Ala. 55, 10 So. 522; Flanigan v. State, 247 Ala. 642, 25 So.2d 685; Phillips v. State, 248 Ala. 510, 28 So.2d 542. "Likewise, for a confession to be voluntary it is not necessary that it proceed wholly at the suggestion of the prisoner. Levison v. State, 54 Ala. 520. Nor is it rendered involuntary because not verbatim as related

by the prisoner. If its transcription is substantially as related and affirmed by the prisoner as correct, it is none the less admissible. 20 Am.Jur. 427, § 492." Dennison v. State, 259 Ala. 424, 66 So.2d 552, 555.

In answer to counsel's contention that the confession was involuntary because of defendant's mental incompetence, we quote further from Dennison v. State, supra:

■ "In this connection it is to be observed that the voluntariness of a confession is not affected by the fact that the accused was not in full possession of her faculties, although that is a circumstance to be considered by the jury in weighing its verity. Vinzant v. State, 28 Ala.App. 220, 180 So. 736; Smith v. State, 25 Ala.App. 297, 145 So. 504; Finch v. State, 81 Ala. 41, 1 So. 565; 22 C.J.S., Criminal Law, § 828, p. 1451.

"We treated of this latter principle in the recent case of Redwine v. State, 258 Ala. 196, 61 So.2d 724, and there cited numerous authorities. The rule was deduced that the mere fact that accused was not in full possession of his mental faculties when the confession was made would not render it inadmissible, but only affected its weight to be accorded by the jury; or was provable merely to support other evidence that the statement was not voluntary. To render such confession inadmissible on that ground alone the mania must have been such that accused was either an 'idot' or a 'lunatic during lunacy.'"

■■ Of course, the duty of determining whether a confession is voluntary rests within the discretion of the trial court, and its decision allowing a confession in evidence will not be disturbed unless an abuse of such discretion clearly appears. We conclude the wide discretion vested in the court is not shown here to have been abused and there was no error in admitting the confession in evidence.

Counsel argue: "There is in this record (other than in the alleged confession) a total lack of evidence, either direct or circumstantial, that there was a taking and carrying away of property from the person or from within the presence of the prosecuting witness, "therefore, there was not sufficient proof of the corpus delicti to justify the admission in evidence of the confession.

■ "Circumstantial evidence may afford satisfactory proof of the corpus delicti and if facts are presented from which the jury may reasonably infer the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the accused is thereby rendered admissible. * * *" Phillips v. State, 248 Ala. 510, 28 So.2d 542, 547.

In 46 Am.Jur., Robbery, p. 162, Sec. 51, it is stated: "Under the rule that all the elements of the corpus delicti may be proved by presumptive or circumstantial evidence, which prevails in most jurisdictions, it has been held that the commission of a robbery is sufficiently established by proof that the victim had valuables on his person at the time of being assaulted, beaten, and rendered unconscious, and that they were missing when he regained consciousness." See also 77 C.J.S., Robbery, § 47, p. 495, corpus delicti.

■ The testimony of the prosecuting witness, given before the confession was admitted in evidence, afforded reasonable inference of the commission of the crime and was sufficient proof of the corpus delicti to permit the introduction of the confession.

We find no merit in the argument advanced by appellant's counsel that reversible error was committed by the court in admitting the confession as State's exhibit A on voir dire. We quote from counsel's argument: "It is an inescapable conclusion that hearing the reading of the confession on voir dire influenced the court to admit it on the case in chief. The court should have denied a hearing or examination of the alleged confession at this point and ruled on its admissibility subsequently in the light of pertinent and competent evidence. In admitting the confession on voir dire, the court prejudiced the rights of appellant and committed error warranting reversal."

150

 Of course, the sole question before the court on voir dire was whether the confession was admissible because voluntary or inadmissible because involuntary, and if the accused had other "pertinent and competent evidence" on the question of its inadmissibility it was incumbent upon him to present it before the court determined that question. After the court admits the confession the evidence given before the jury regarding the manner in which the confession was obtained is for the purpose of enabling the jury to determine its weight and value as evidence.

In Vernon v. State, 239 Ala. 593, 196 So. 96, 100, it is said: "Extra judicial confessions of guilt by an accused on trial for crime are prima facie involuntary, and the burden rests upon the state to overcome this prima facie infirmity by evidence satisfactory to the court trying the case that the confession was voluntarily made, before such confession can be received in evidence. It is the right of the accused to controvert evidence offered in laying such predicate by cross-examination, or by evidence aliunde, but such countervailing evidence impeaching the predicate to be successful must be offered on the voir dire, before the confession is admitted. Lockett v. State, 218 Ala. 40, 117 So. 457; Cook v. State, 16 Ala.App. 390, 78 So. 306; Pope v. State, 183 Ala. 61, 63 So. 71; Jackson v. State, 83 Ala. 76, 3 So. 847.

"If such countervailing evidence is not offered until after the preliminary question of the admissibility of the confession is passed on by the court it goes to the jury on the credibility of the confession only. Lockett v. State, supra; Cook v. State, supra."

 As heretofore stated, the witness Stanford testified he found two hats and a tire tool inside the rolling store. Defendant's confession referred to and identified a wrench and a tire tool used in beating the victim and a hat belonging to defendant but which was worn by Robert Howell at the time of the robbery. The continued custody of these articles was accounted for by the State, and the articles together with the testimony of witness Stanford as to the defendant's identification of them at the time of making the confession were properly admitted in evidence in corroboration of the confession, Phillips v. State, 248 Ala. 510, 28 So.2d 542; Vernon v. State, supra, and was not error as against the contention that "the statements elicited from Stanford with reference to these exhibits called for separate confessions for which a predicate should have been, but was not laid."

 There was sufficient evidence of defendant's guilt to make it a question for the jury; hence there was no error in refusing the requested general charge. The trial court and the jury saw the witnesses and heard the evidence and we cannot say the verdict was so contrary to the great weight of the evidence as to put the trial court in error for refusing to grant the motion for a new trial.

The judgment of the lower court is affirmed.

Affirmed.