138 So.2d 703

Thomas R. STAIN

v.

STATE of Alabama.

1 Div. 827.

Supreme Court of Alabama.

Dec. 21, 1961.

Rehearing Denied March 22, 1962.

Wm. L. Green and Wm. O. Haas, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., John F. Proctor and John C. Tyson, III, Asst. Attys. Gen., for the State.

LIVINGSTON, Chief Justice.

Appellant was tried and convicted in the Circuit Court of Mobile County, Alabama, of murder in the first degree and his punishment fixed at death by electrocution. This appeal comes here under the Automatic Appeal Statute, Sec. 382(1) of Title 15, Code of Alabama 1940 (Cum. Pocket Part).

Thomas R. Stain, the defendant in the lower court and hereinafter referred to as appellant, killed one Bernon T. Jenkins by shooting him with a pistol on the night of December 6, 1958.

Jenkins was the manager of the Food Town Store on Old Shell Road in Spring Hill, Mobile County, Alabama. He was killed about 9:00 o'clock on the night of December 6, 1958. He closed the store, carrying out with him a bag of groceries and the day's receipts in money, amounting to $1,484, which was also in the grocery bag. He went to his car across the road, placed the groceries and money in the front seat, and was ready to get in the car when he was accosted by three men in an attempt to rob him. One of the men named Breazeale had a 38 caliber pistol which he dropped while struggling with Jenkins. At this time, the appellant, Stain, hit Jenkins on the back of the neck with an old model 32 pistol. The pistol discharged and the bullet entered Jenkins' neck and ranged upwards through the brain, killing him.

The evidence tended to prove a conspiracy to rob the deceased on the part of appellant and three others, and that they were together in the afternoon and early part of the night of the killing. The defendant confessed to the killing and claims the shooting was accidental.

■ Appellant claims it was error for the trial court to allow the state to introduce the revolver and cartridge that were found by the body of Jenkins and dropped by an accomplice of appellant when they attempted to rob the deceased and just before appellant killed deceased.

The appellant's confession referred to and identified a pistol dropped by an accomplice at the time of the killing. The custody of the pistol was accounted for by the state and such pistol used by his accomplice was properly admitted not only as being part of the res gestae but to corroborate appellant's confession. Blackburn v. State, 38 Ala.App. 143, 88 So.2d 199, cert. den. 264 Ala. 694, 88 So.2d 205 (vacated on other grounds), 354 U.S. 393, 77 S.Ct. 1098, 1 L.Ed.2d 1423; Payne v. State, 261 Ala. 397, 74 So.2d 630; Carter v. State, 219 Ala. 670, 123 So. 50. There was no error in the introduction of the revolver and cartridge.

■ Appellant also contends that the admission of testimony of a state witness detailing the movements and actions of appellant and his confederates prior to the killing and subsequent thereto was error.

The testimony objected to, in effect, tended to show that the appellant and two of his accomplices changed clothes and left Breazeale's house about 45 minutes before the killing, and that appellant and another person returned about one hour after the killing.

■ Appellant's confession tended to show a conspiracy to rob the deceased, therefore, evidence which tended to corroborate appellant's confession was admissible. Flanigan v. State, 247 Ala. 642, 25 So.2d 685; Carr v. State, 21 Ala.App. 299, 107 So. 730. And any evidence going to show the ability and opportunity of the appellant to commit the crime or facts showing the circumstances leading up to and eventuating in the homicide are also admissible. Smith v. State, 253 Ala. 220, 43 So.2d 821; Collins v. State, 138 Ala. 57, 34 So. 993. There was no error in this regard.

■ Testimony elicited by the state as to the dress of the appellant and his co-conspirators, and others, preceding and following the crime, may have been immaterial and irrelevant, but the introduction of immaterial evidence is not reversible error unless it is injurious or prejudicial to the substantial rights of the defendant. Supreme Court Rule 45, Title 7, Code 1940, Appendix (Cum.Pocket Part).

The state introduced evidence of the confession by defendant, therefore, evidence as to the manner of his dress before and after the crime could not be prejudicial. The admission of said evidence was not reversible error.

But the judgment of conviction must be reversed because of the voluntary statement of state witness, Lt. Burch, a police officer with 17 years' experience, which was so highly prejudicial that the substantial rights of the defendant were impaired.

The record discloses the following cross-examination of Lt. Burch:

"Q. Have you ever seen a thirty-two caliber automatic pistol in the possession of Tommie Stain? A. No sir.

"Q. To your knowledge, have you ever known him to own one? A. Yes sir.

"Q. Have you ever known him to own any other gun? A. Only what he told me about it.

"Q. Only what he told you about it; have you ever seen Tommie Stain under the influence of intoxicants, to your knowledge under the influence of intoxicants? A. Yes, sir.

"Q. Have you ever seen him when he was to your knowledge under the influence of narcotics? A. No sir.

"Q. Your answer was no? A. No sir.

"Q. That is all for this witness at this time.

"REDIRECT EXAMINATION

"By Mr. Booth.

"Q. One question. Mr. Green just asked you about a weapon and you said you only knew about what Tommie Stain told you about a weapon, tell us what was that? A. He told me about the time he shot two men up in Mississippi that he owned a twenty-two automatic target pistol.

"Q. A twenty-two automatic target pistol.

"Defendant moves to strike the answer of the witness on the ground that it has no probative value in the case whatsoever, and is entirely inflammatory and prejudicial of the rights of this defendant, and I move that the answer be stricken and the jury be instructed to disregard it.

"BY MR. BOOTH: Something he brought out; he was inquiring about a weapon.

"BY MR. GREEN: We didn't inquire about any other offense which may or may not have been committed by this defendant.

"BY MR. BOOTH: He elicited from the witness the answer the only thing I knew about a weapon is what he told me, and he didn't ask him what he told him and I asked him, certainly, what he told him about a weapon.

"BY THE COURT: I think probably, Mr. Green, the answer of the witness went a little further than called for by the question, and I will have the Reporter read it and I will undertake to have a portion of it deleted from the consideration of the jury.

"BY MR. BOOTH: You will recall the questions he asked him about a weapon; now he was searching for a weapon.

"BY THE COURT: The question was did he ever know him to own a weapon. Your motion seeks to have stricken that part of the witness' answer with reference to shooting some other parties in Mississippi, is that what you said—WITNESS: Yes sir. That part of the answer is stricken on your motion and the jury is specifically directed to give no weight or consideration whatsoever to that statement of the witness in response to the Solicitor's question.

"BY MR. GREEN: Now, your Honor, I further move for a mistrial at this time of this cause, and I submit

that the unresponsive answer from this witness cannot be eradicated from the minds of the jurors; that he has brought up matters that are highly inflammatory and prejudicial and have no probative value and are illegal and immaterial in this case, and that as such they are so prejudicial to the rights of this defendant that I ask at this time for the Court to grant a mistrial of the cause.

"BY THE COURT: In reply to your motion, sir, the Court feels that this jury, under their oaths as jurors, are going to obey the instructions of this Court. The instructions of the Court were to the effect that that part of the witness' answer would be given no weight or consideration whatsoever by the jury; it is to be considered as not having entered in the case and the Court feels certain that the jury is going to obey those instructions of the Court, and with that statement your motion is denied. Defendant reserved an exception to the ruling of the Court. Witness excused."

In the first place, the statement made by Lt. Burch that "he told me about the time he shot two men up in Mississippi" was clearly unresponsive, incompetent, illegal and irrelevant for any purpose in this case, and the learned trial judge so ruled, and admonished the jury to disregard it, as above indicated. It must be conceded that if the situation was curable by admonition, the instructions were adequate for that purpose.

The decision of the question as to its eradicability is a delicate operation. It requires recognition of, without definitely drawing, the imponderable line where the broad legal discretion lodged in trial courts ends and the more objective review of appellate tribunals begins. Furthermore, the doctrine of harmless error must be given full play. The purpose of the doctrine is to cast upon the party complaining of technical or procedural errors the burden of showing that they have substantially affected his legal rights. In such cases, there is always the possibility, often the probability, that the prejudicial statement entered into the judgment, and the harmless error rule is not intended to save such a verdict from appellant condemnation.

Relating to harmless errors, it was said by Mr. Justice Rutledge in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557:

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. * * * But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

We have many cases on the general question of whether improper remarks of counsel, unresponsive answers to questions, statements made, or acts done in the course of a trial, etc., can be eradicated by proper instructions by the trial judge, but we see no point in attempting to analyze them here.

It was said in the case of Cassemus v. State, 16 Ala.App. 61, 75 So. 267, 268:

"* * * A defendant is entitled to a fair trial by jury according to the law and the evidence, and such trial should be free from any appeal to prejudice or other improper motive. It would appear that the learned and up-.

right judge before whom this trial was conducted did all in his power to right the wrong occasioned by the improper and untimely remarks of the solicitor; it cannot, however, be seriously doubted but that the poison that had been injected would be difficult to eradicate; and in this case, when all the facts are taken into consideration, it does not clearly appear that a perfectly fair trial, without undue burden, prejudice, and bias, was accorded the defendant, and therefore the court was in error in overruling defendant's motion for a new trial. * * *"

See also Emerson v. State, 30 Ala.App. 248, 4 So.2d 183, cert. gr. 241 Ala. 383, 4 So.2d 186 (reversed on other grounds); and Bozeman v. State, 25 Ala.App. 281, 145 So. 165.

On conviction of first degree murder in Alabama, the jury fixes the punishment. In the instant case, after the case was submitted to the jury, and after some deliberation, the foreman of the jury reported to the trial judge that "we have agreed on the degree of the crime * * * but I think we are hopelessly deadlocked on the degree of punishment."

The trial judge, in part, told the jury:

" * * * the Court feels for the period of time that you gentlemen have had this case for deliberation is too short a period of time to come in and tell the Court you can't agree."

The jury, after eating dinner, returned to the jury room and after further deliberation, returned the verdict above indicated.

True, there was no objection or exception, by the appellant, to any part of the proceeding outlined just above, and we do not base the reversal on it, but it is indicative that the poisonous effect of the voluntary statement of Lt. Burch that "He told me about the time he shot two men up in Mississippi" may not have been eradicated from the minds of the jury. So, in this case, we cannot say with fair assurance

that the jury was not substantially swayed by the officer's statement, even though the learned trial judge did all that he could to eradicate it from their minds.

This is a death case and it is not an unwarrantable assumption that the jury experienced trouble arriving at a conclusion, and we cannot be certain that the statement of Lt. Burch was not placed in the scales in the formation of the ultimate judgment. These circumstances indicate more than a possibility that appellant's legal right to a fair trial was substantially impinged by the incompetent and prejudicial testimony.

Other matters argued in brief are not likely to occur on the retrial of the case and we do not consider them.

Reversed and remanded.

LAWSON, STAKELY and MERRILL, JJ., concur.