320 So.2d 727

In re Johnny Daniel BEECHER

v.

STATE of Alabama.

Ex parte Johnny Daniel Beecher.

SC 1054.

Supreme Court of Alabama.

July 10, 1975.

Rehearing Denied Sept. 4, 1975.

William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

U. W. Clemon, Birmingham, Elaine R. Jones, NAACP Legal Defense & Educational Fund, Inc., Jack Greenberg, New York City, for petitioner.

EMBRY, Justice.

Petition for writ of certiorari was granted and we here review the Court of Criminal Appeals' decision in *Beecher v. State,* 55 Ala.App. ——, 320 So.2d 716, 8 Div. 426 (1974), which upheld the third conviction of petitioner for murder in the first degree.

The former trials resulted in reversals on appeal. *Beecher v. State,* 280 Ala. 283, 193 So.2d 505 (1967), rev'd 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967); *Beecher v. State,* 288 Ala. 1, 256 So.2d 154 (1971), rev'd 408 U.S. 234, 92 S.Ct. 2282, 33 L.Ed. 2d 317 (1972). These cases fully report the overall facts. We will discuss only those pertinent to review of the alleged errors occurring during the third trial. Those errors are said to consist in: (1) A remark made by the prosecutor in final argument was impermissible comment on defendant's failure to testify, (2) Blacks were systematically excluded from the jury venire. We find that Const. of Ala., 1901,

§ 6, mandates reversal, therefore we remand for new trial.

I

Petitioner's first contention is that a remark made in final argument by the District Attorney was impermissible comment on defendant's failure to testify. To decide if the remark was impermissible we must look to the testimony of Deputy Sheriff Kenneth Ray Phillips who related to the jury an extrajudicial self inculpatory admission of defendant Beecher.

"DIRECT EXAMINATION

"BY MR. BLACK:[1]

"Q. Mr. Phillips, what is your full name, please, sir?

"A. Kenneth Ray Phillips.

"Q. And where are you at the present time?

"A. In Quantico, Virginia.

"Q. And what are you doing up there?

"A. I am going through the National F.B.I. Academy School.

"Q. And where do you live?

"A. Centre, Alabama.

"Q. And what is your occupation?

"A. I am a Deputy Sheriff.

"Q. And in what county, please?

"A. Cherokee County.

"Q. And how long have you been a Deputy Sheriff of Cherokee County, Mr. Phillips?

"A. Six and a half years.

"Q. Do you know the Defendant over there, Johnny Daniel Beecher, sitting by his Attorney, Miss Jones?

"A. Yes, sir.

1. John T. Black, Esq., District Attorney, Ninth Judicial Circuit. The State was also represented by Thomas C. Pettus, Esq., District Attorney, Thirty-Sixth Judicial Circuit.

"Q. I will ask you if you were present in Cherokee County during his last trial in February of 1969?

"A. Yes, sir.

"Q. Do you recall seeing the Defendant, Johnny Daniel Beecher, while the jury was deliberating during his last trial?

"A. Yes, sir.

"Q. And what was your official capacity at that time?

"A. I was working as an officer of the court as Bailiff.

"Q. And did you have him in your custody at that time?

"A. Yes, sir.

"Q. Where did you have him in custody?

"A. In a witness room.

"Q. All right. Now, at this time, Mr. Phillips, did you talk with him about his case?

"A. No sir.

"Q. Did you make any statements at all about the trial that had just started and the jury now had?

"A. No, sir.

"Q. Did you ask him any questions at all about the trial?

"A. No, sir.

"Q. About any of the witnesses?

"A. No, sir.

"Q. Did any law enforcement officer ask you to question the Defendant, Johnny Daniel Beecher?

"A. No, sir.

"Q. Did the Sheriff of Jackson County ask you to?

"A. No, sir.

"Q. Did any of the State Investigators?

"A. No, sir.

"Q. Did the District Attorney, did I or Mr. Latham ask you to question the Defendant, Johnny Daniel Beecher?

"A. No, sir.

"Q. Did Sheriff Garrett or anybody else?

"A. No, sir.

"Q. Now, during the time that you had him in your custody, where were you, Mr. Phillips?

"A. In the courthouse in the witness room.

"Q. Did he make a statement to you?

"A. Yes, sir.

"Q. Now, was this—did you ask him for a statement?

"A. No sir.

"Q. Did you make a question prior to the statement that he made to you?

"A. No, sir.

"Q. And who, if anybody else, was present at this time?

"A. No one, just Johnny and myself.

"Q. Had you all been talking about other matters prior to that time?

"A. We had been talking, yes.

"Q. But not about his case?

"A. Not about the case, no, sir.

"Q. Now, what did he state to you at this time?

"A. He said, 'Man, I am scared of that electric chair. I don't deserve to walk the streets, because I am a guilty man.'

"Q. Now, did you make any response to that statement?

"A. No, sir.

"Q. Did you reply to him in any way?

"A. No, sir.

"Q. Now, who, if anyone, did you tell that the Defendant, Johnny Daniel Beecher, had made that statement to?

"A. Sheriff Garrett.

"Q. And when did you tell him?

"A. It was two or three days after the trial.

"Q. Do you recall how many it was?

"A. No, sir, two or three or four or something like that.

"Q. Something like that?

"A. I don't recall just how many."

■ At the end of the State's case, petitioner rested without offering any evidence. Pursuant to directions by the trial court, the final arguments were not reported, except for objections and rulings made during the arguments.[2] At the close of arguments petitioner moved for a mistrial. The grounds for the mistrial were established by petitioner's attorney in the following manner:

"MR. CLEMON: Your Honor, at this time we move to have this Court to declare this trial a mistrial because of the District Attorney's comment on the Defendant's presence to take the stand—on the Defendant's failure to take the stand. We objected to it heretofore and the objection was overruled and we took exception, but we did want to make it clear for the record that formally we are requesting this Court to declare a mistrial because of the prejudicial comment on the failure of the Defendant to take the witness stand, a right guaranteed to him by the United States Constitution.

"THE COURT: I don't construe the statement as a comment on the failure to take the stand. As I understood it, it was that the—the statement was undenied, and that has been held to be not a comment on the statement.

"MR. CLEMON: Your Honor, may we just have the Court Reporter to read back the statement?

"THE COURT: Yes.

"MR. CLEMON: As I recall it, the statement was that no one took the stand.

"THE COURT: All right. Let's—

"MR. PETTUS: If the Court please, I would like to say this—

"THE COURT: Well,—

"MR. PETTUS: When they made the objection, they did not state any words or language used.

"MR. CLEMON: At this point the Judge said 'Overruled', and we said 'Except.' We didn't have an opportunity to state any words or language used.

"THE COURT: Well, I don't believe that you were denied an opportunity. I didn't intend to, but you might have thought so and I am not going to—

"MR. BLACK: It's been upheld by the Supreme Court to not comment on that.

"THE COURT: Let's just stop arguments and hear at this time what—go back and see what—

"THE COURT REPORTER: Judge, he objected—

"THE COURT: Yes, sir.

"THE COURT REPORTER:—and you overruled the objection and they excepted. It was not stated, or I did not hear it stated, what the objection was.

---

2. It is not required that final arguments be reported. Code of Ala., Tit. 13, § 262. We think the better practice in criminal cases, however, is for the trial court to require that final arguments be reported.

"THE COURT: All right.

"MR. DIVENS: Did you get the motion for a mistrial?

"THE COURT: All right. As you remember, Mr. District Attorney, Mr. Black, what was it that you said?

"MR. BLACK: I said the testimony —I got it down here sonewhere [sic]— was undisputed. The testimony of the State was undisputed.

"MR. DIVENS: Did you get the motion for a mistrial?

"MR. CLEMON: Did you get the motion Mr. Black made before we objected? I mean the statement that Mr. Black made before we objected? Do you have that?

"ELAINE JONES: Are you taking the arguments?

"THE COURT REPORTER: No, ma'am.

"MR. CLEMON: Oh. Okay. Well I want to take the stand.

"THE COURT REPORTER: I am not taking the arguments down, just the objections and exceptions.

"ELAINE JONES: I see. You are not taking it down. Oh, yes, we misunderstood.

"THE COURT: Well, the Court heard the thing, and I will let you state what you said, as you remember it. I think I understand it, but I am going to give each one of you an opportunity.

"MR. BLACK: Well, Judge, if you can, if you want to just dictate in there, I am sure we will both agree on it.

"MR. DIVENS: Mr. Black, you were not reading from that paper?

"MR. BLACK: No. Oh, no.

"THE COURT: All right, let's just make a statement. As an officer of the Court, I will let you make a statement as to what you think it was.

"MR. CLEMON: Well, I want to be sworn as a witness.

"THE COURT: Well, if you would like to be sworn, I will be glad to do it.

"(WHEREUPON MR. CLEMON WAS SWORN BY THE COURT IN THE FOLLOWING MANNER)

"THE COURT: Do you solemnly swear that the evidence that you give will be the truth, so help you God. And you can stand where you are if you like.

"MR. CLEMON: Yes, sir. For the record, my name is U. W. Clemon. I am an attorney at law licensed to practice in the State of Alabama. During the oral arguments of Mr. Black to the jury, I heard him state, quote, 'No one took the stand to deny it,' unquote.

"MR. BLACK: That's right.

"THE COURT: All right, I will— that wasn't necessarily referring to your —We hear these arguments all the time, and this is not a novel argument, but this has been before our courts many times, and the law of this state, and I perceive the law of the Federal Courts is not different. But you cannot say that evidence is uncontradicted, and if it is uncontradicted, then you cannot say that no witness took the stand to deny this. You are not prohibited from—on either side from making that statement. And so I will overrule your motion now.

"MR. CLEMON: Yes, sir. We except.

"THE COURT: I will just overrule it, because the Court finds that this was not a reference to the failure of the Defendant to take the stand.

"MR. DIVENS: Your Honor, for the record, we would like to state that Mr. Black, when making that statement, was referring to the testimony of Ken Phillips.

"THE COURT: Well, call the jury back. Hold on there just one minute. I

want to finish—tell them to hold on just one minute, because I got to finish one of these possible verdicts that I had started, and let them keep them out there until I finish that."[3]

Alabama Constitution, § 6, declares:

"That in all criminal prosecutions, the accused * * * shall not be compelled to give evidence against himself * * *"

Code of Ala., Tit. 15, § 305, states:

"On the trial of all * * * criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness; and his failure to make such a request shall not create any presumption against him, nor be the subject of comment by counsel. * * *"

Our statute goes further than the comparable federal statute, 18 U.S.C., § 3481. In *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106 ·(1965), the Supreme Court held that a prosecutor's comment on the failure of a defendant to testify was violative of U.S.Const., Amends. V, XIV. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), raised the possibility that such comments would not require automatic reversal when such a comment was harmless beyond a reasonable doubt, i. e., that the matter complained of could have in no way contributed to the conviction. More recently, however, the Supreme Court has raised the possibility that such prosecutorial comment may achieve the status of requiring automatic reversal.

In the following case, although it did not deal with the prosecutor's comment on the failure of a defendant to testify, the matter of comment by the prosecutor about defendant (and counsel for him) made during final argument was the subject of review. The statement of the Supreme Court in that case is instructive:

"This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel * * * or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. * * * *When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them. * * *" Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 436–37 (1974). (emphasis added)

Where there has been direct comment on defendant's failure to testify, and the trial court has not promptly acted to cure such a statement, the conviction must be reversed. *Lamberth v. State,* 54 Ala. App. 233, 307 So.2d 43 (1975).

. More difficult questions arise where indirect reference is made to defendant's failure to testify. In *Padgett v. State,* 45 Ala.App. 56, 223 So.2d 597 (1969), the prosecutor remarked "Did anybody tell you under oath from the stand that John Allen Padgett didn't put that lock up there * * *." This was held to be an impermissible comment on the failure of the defendant to testify since he was the only one who could have refuted the State's testimony. In *Padgett,* supra, and *King v. State,* 45 Ala.App. 348, 352, 230 So.2d 538, 541 (1970), it was said:

"Under *Washington v. State,* 259 Ala. 104, 65 So.2d 704; *Welch v. State,* 263 Ala. 57, 81 So.2d 901, and *Taylor v. State,* 279 Ala. 390, 185 So.2d 414, § 305 is read literally, i. e., covert references are construed against the defendant. In other words, no matter what the jury might infer, there must virtually be a direct identification of the defendant alone as the individual who has not become a

---

3. Defendant Beecher was represented by U. W. Clemon, ·Esq., Elaine R. Jones, Esq., and Thomas J. Divens, Esq.

witness. Earlier cases to the contrary apparently must be viewed askance. See *Williams v. State*, 43 Ala.App. 343, 190 So.2d 556, and the border line case of *White v. State*, 44 Ala.App. 312, 208 So. 2d 222."

Presumably had there been someone other than Padgett who could have refuted the State's evidence, the decision in Padgett would have resulted in affirmance. See *Street v. State*, 266 Ala. 289, 96 So.2d 686.

■ The difficulties of the virtual identification doctrine are illustrated by *Welch v. State*, 38 Ala.App. 239, 81 So.2d 897, rev'd 263 Ala. 57, 81 So.2d 901 (1955). A defendant's right not to testify must be preserved inviolate. But where the case presented by the prosecutor stands uncontradicted, should he not be allowed to comment on that fact to the jury in a situation where the defendant has not testified, offered no other evidence, nor elicited contradictions in the case of the State by cross-examination of witnesses for the State.

■ This presents competing principles which require accommodation. Before finding such accommodation we should discuss present construction placed on Code of Ala., Tit. 15, § 305. The appellate courts of this State have construed that statute strictly. As was said in *Padgett*, supra, it must be found that the prosecutor's comment is virtually a direct identification of the defendant alone as the person who has not testified. See Cates, Closing Arguments In A Criminal Case, 33 Ala. Law. 87, 212 (1972). In so construing Code of Ala., Tit. 15, § 305, our earlier cases have not given sufficient emphasis to Const. of Ala. of 1901, § 6. It has long been held regarding the introduction of illegal evidence, such as coerced confessions,

that the test is not whether the illegal evidence did influence the jury, but whether it might have influenced it in arriving at the verdict. *Hubbard v. State*, 283 Ala. 183, 215 So.2d 261 (1968), vacated in part 408 U.S. 934, 92 S.Ct. 2851, 33 L.Ed.2d 747 (1972). See also *Chapman*, supra, and *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Under Const. of Ala. of 1901, § 6, there is no valid basis for using a different test for improper prosecutorial comment. Thus we hold today that where there is the possibility that a prosecutor's comment could be understood by the jury as reference to failure of defendant to testify, § 6 is violated. We specifically disapprove any contrary cases [4] which construe Code of Ala., Tit. 15, § 305, as requiring reversal only when there is virtually a direct identification of the defendant as the one who did not testify. Such a construction of Code of Ala., Tit. 15, § 305, is not countenanced by the constitutional protections afforded under Const. of 1901, § 6.

■ The rule of Alabama constitutional law which we adopt today may make it appear that a prosecutor could never impress the jury with the fact that his case, or any facet of it, is uncontradicted. *Where the State's evidence does stand uncontradicted*, the prosecutor does have the right to point this out to the jury. In that circumstance the prosecutor could say: "There has been no refutation of any of the evidence presented by the State," or more simply, "The State's evidence stands uncontradicted," or other appropriate comment to like effect.

■ But it is concomitantly the duty of the prosecutor not to, in any manner, comment on the failure of the defendant to testify. Thus if there exists the possibility that *the prosecutor* [5] has commented in

---

4. In all candor we point out that prior cases on this question are bottomed on § 305 rather than § 6 of Const. of 1901; obviously § 305 is a legislative enactment of the principle involved which is contained in § 6 of Const. of

1901. *Chamberlain v. State*, 46 Ala.App. 642, 247 So.2d 683.

5. As distinguished from comment by the trial court in its instruction to the jury. *Pierson v. State*, 39 Ala.App. 346, 100 So.2d 47.

such a manner that the jury may under-stand it as a comment on the defendant's failure to testify, it is for the trial court to cure this violation of prosecutorial duty by prompt and vigorous instructions to the jury informing them of defendant's right not to be compelled to testify and that they may draw no presumption from his decision not to testify. *Tillis v. State,* 292 Ala. 521, 296 So.2d 892 (1974), and cases cited therein. In this regard we note that some comments can be so prejudicial as to be ineradicable. *Stain v. State,* 273 Ala. 262, 138 So.2d 703 (1961); *McLemore v. International Union,* 264 Ala. 538, 88 So.2d 170 (1956) (noncriminal case).

■ Under the specific facts of this case, we have no doubt that even under the rule enunciated in *Padgett,* supra, reversal is required. Our interpretation of the record leads to the conclusion that the "it" in "No one took the stand to deny *it*" could only refer to the testimony of Deputy Phillips. The jury could well have understood this as reference to Beecher's failure to testify. The trial court took no action to cure the effect of the prosecutor's comment. In this posture we cannot say that Beecher received the fair and impartial trial, free of constitutional infirmity, to which he and all other persons are entitled.

## II

■ Since there must be a new trial we deem it appropriate to consider on this record Beecher's contention that blacks were systematically excluded from the jury venire. As to this contention and on this point our decision does not differ from that of the Court of Criminal Appeals in this case, 55 Ala.App. ——, 320 So.2d 716 (8 Div. 426, 10–1–74). The decision of that court and the recommendation contained therein is very well stated in the words of Judge Wright, the author of that opinion.

"We do not consider the evidence in this case to make out a prima facie case of invidious discrimination under the Fourteenth Amendment. However, in view of the presence of reasonable basis for the question of discrimination being presented in this case, we strongly recommend to the Jury Commission of Lawrence County that every effort be promptly made to fill the jury roll with the names of all citizens of the county found to be qualified under Title 30, Sec. 21, Code of Alabama so that no colorable foundation for challenge upon grounds of discrimination may ever again be available. Such is the duty imposed by the law of the state upon the Jury Commission in every county."

■ We would add the following comments: Mere statistical disparity between the number of blacks presumed eligible for jury duty and the number actually included in the jury roll does not of itself establish a primary inference of invidious discrimination. *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). This is not to say that *substantial* disparity would not do so. *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). These cases illustrate that each case must be considered on its own peculiar facts. *Alexander,* supra, does indicate that where there is opportunity for discrimination then this, coupled with statistical disparity, may be enough to establish the rebuttable inference of impermissible exclusion.

■ Once a movant has by proof created a primary inference of discrimination, the burden shifts to the State to show there was no discrimination. This burden is met only by a clear and convincing showing that the selection process utilized was racially neutral. It is apparent from *Alexander,* supra, that if opportunity for discrimination is present, we cannot consider that resort was not had to it. Thus if a trial judge is confronted by evidence which shows, at least, opportunity for dis-

crimination and blacks were excluded from the venire then the primary inference arises. The burden then falls on the State to prove that in the process of venire selection, no consideration whatsoever was given to race. Affirmations of good faith alone, in the selection process, is insufficient to rebut the primary inference. *Alexander,* supra. The Const. of Ala. of 1901, § 6, guarantees that jury selection shall be free of discrimination and imposes a duty on officials who make such selection to insure that this guarantee remains inviolate. *Brand v. State,* 13 Ala.App. 390, 69 So. 379 (1915). See also *Finnett v. State,* 12 Ala.App. 237, 67 So. 768 (1915).

Reversed and remanded.

SHORES, J., and CATES, P. J. (sitting specially) concur.

HEFLIN, C. J., and MADDOX and JONES, JJ., concur specially.

MERRILL, BLOODWORTH and FAULKNER, JJ., dissent in part and concur in part.

MADDOX, Justice (concurring specially.)

I think that the prosecutor's statement *in this case* was a *direct* comment on the defendant's failure to testify. Consequently, I think *this case* must be reversed. I disagree, however, with that portion of the opinion which reads as follows:

"Thus we hold today that where there is the possibility that a prosecutor's comment could be understood by the jury as reference to failure of defendant to testify, § 6 is violated. We specifically disapprove any contrary cases which construe Code of Ala., Tit. 15 § 305, as requiring reversal only when there is virtually a direct identification of the defendant as the one who did not testify. Such a construction of Code of Ala., Tit.

15, § 305, is not countenanced by the constitutional protections afforded under Const. of 1901, § 6."

I concur in part two of the opinion which holds that there was no showing of systematic exclusion of blacks from the Lawrence County jury venire.

JONES, Justice (concurring specially).

I concur with the majority opinion reversing and remanding this cause. I further agree with the rationale for its holding. I disagree with that portion of the opinion dealing with the "prompt and vigorous instructions to the jury informing them of defendant's right not to be compelled to testify . . ." I believe that the constitutional guarantee of the right against self incrimination is of such quality that its violation is incurable by any attempt on the part of the trial court to disabuse the minds of the jury with respect thereto. This is a bell once rung which cannot be unrung. In all other respects, I agree with the opinion.

HEFLIN, C. J., concurs.

BLOODWORTH, Justice (concurring in part, dissenting in part).

I concur in Part II of Mr. Justice Embry's opinion for the Court (affirming the Court of Criminal Appeals) and holding there was no showing of systematic exclusion of blacks from the Lawrence County jury venire from which the jury was chosen to try Beecher.

I dissent from the holding as to Part I because I do not think the *"it"* in "No one took the stand to deny *it"* is sufficiently identified so that it could be said to refer to the inculpatory statement testified to by Deputy Sheriff Phillips as having been made by Beecher to him. I would not go so far as the majority do and hold that "where there is the possibility that a prose-

cution's comment could be understood by the jury as reference to failure of defendant to testify, § 6 [Alabama Constitution] is violated." I would affirm the Court of Criminal Appeals' decision in this regard.

MERRILL and FAULKNER, JJ., concur.