The appellant, Ernest D. Pittman, was indicted and tried by a jury for the offense of selling marijuana, in violation of the Alabama Uniform Controlled Substances Act, § 20-2-70, Code of Alabama (1975). After the jury returned a verdict of guilty, a sentencing hearing was conducted in which Pittman was sentenced to imprisonment for a term of four years.
The State's evidence tended to show:
Richard Mobley, an undercover agent for the Narcotics Unit of the Alabama Bureau of Investigation, and Greg Amerine, an informant, went to Pittman's residence at approximately 8:30 p.m. on September 15, 1982. While Amerine and Pittman worked *Page 792 
on an air conditioner in the backyard, Mobley talked to several people who were also in the yard. During this time, Mobley overheard Amerine and Pittman discussing when the "good" marijuana would be delivered. At 9:00 p.m., Amerine introduced Mobley to Pittman. Mobley asked about purchasing a half pound of marijuana and Pittman responded that he had plenty of marijuana, but that he did not know if he would let him have any because he did not know him. Then, after they proceeded with general conversation, Pittman told Mobley and Amerine to go back to their truck parked in the front driveway and get in it. He further said that he would give Mobley the requested amount of marijuana for two hundred dollars.
While sitting with Amerine in the truck, Mobley observed the following: Pittman went inside his house; all the lights in the house were turned off; someone carrying a flashlight went behind the house; and then the flashlight was cut off. At 9:20 p.m., Pittman came from behind the truck and stuck a flashlight and a .38 Derringer in the passenger's window. After Pittman told Mobley that he was not going to sell him any marijuana because he did not know him, he asked Mobley questions such as where he lived, how long had he worked in Enterprise, and what was his phone number. Mobley responded and then Pittman demanded the two hundred dollars. After Mobley gave him the money, Pittman told Mobley he would find the marijuana by the first post on the right side of the road in the direction from whence he and Amerine had come. Before Mobley and Amerine left, however, Pittman stated, "If you like that marijuana, the ships are coming in tomorrow, come back and the stuff I will have tomorrow will be better than that." At the specified post, which was thirty to fifty yards from Pittman's residence, Mobley picked up two bags. The substance in the bags was later examined by a State toxicologist who determined the substance to be marijuana.
 I
Pittman moved to exclude the State's evidence on the following grounds: (1) the prosecutor failed to prove a prima facie case; and (2) as a matter of law, Pittman was entrapped for, as the State's own evidence showed, he had no propensity to commit the offense. We find that Pittman's motion was properly denied. The motion was properly denied on the first ground because ample evidence was presented from which the jury could by fair inference find that Pittman illegally sold marijuana to the undercover A.B.I. agent. See Fields v. State,424 So.2d 697 (Ala.Cr.App. 1982). Likewise, the motion's second ground is without merit. As we noted in Fields v. State, 424 So.2d at 699, "the fact that the informer acting on behalf of the State or the undercover agent initiated the sale alone does not constitute entrapment as a matter of law." See also Pittsv. State, 291 Ala. 136, 279 So.2d 119 (1973); Miller v. State,53 Ala. App. 213, 298 So.2d 633, cert. denied, 292 Ala. 741,298 So.2d 639 (1974). Although the State approached Pittman about selling marijuana, the actions leading up to the sale indicate a criminal disposition. See Chillous v. State, 441 So.2d 1055
(Ala.Cr.App. 1983); Fields, supra. "Even though the State, to secure evidence, is shown to have tempted the accused, yet if there is proof of his active appetite for forbidden fruit, the issue of causation is one of fact for the jury." (Note omitted)Lindsay v. State, 41 Ala. App. 85, 125 So.2d 716, 721, cert. stricken, 271 Ala. 549, 125 So.2d 725 (1960), cert. denied,366 U.S. 933, 81 S.Ct. 1656, 6 L.Ed.2d 392 (1961). Thus, we find that Pittman was not entrapped as a matter of law and the motion to exclude was properly denied.
 II
During the prosecution's closing argument, the following occurred:
 "MR. HEAD: But remember the presumption of innocence is only a presumption, and that presumption can be overcome by the State simply meeting its burden of proof, and that burden of *Page 793 
proof is to convince you people beyond a reasonable doubt to a moral certainty of this man's guilt, that he is guilty of the crime of which he has been accused.
 "Now, I submit to you that the evidence in this case, uncontroverted, is more than sufficient to bear out the proof of these charges.
 "MR. WEATHERFORD: Excuse me, Your Honor. We would like to move for a mistrial. He is saying the evidence is uncontroverted. The testimony is there was no conversation except between the two parties, and he is relying on illegal evidence in this case. There is no way it could be controverted except by infringing on this defendant's rights.
 "THE COURT: Motion to exclude, motion for mistrial and objection denied."
Pittman contends that the trial court's denial of his mistrial motion was reversible error because the prosecution impermissibly commented upon Pittman's failure to testify. We disagree and support our holding with the decision pronounced in Ex parte Dobard, 435 So.2d 1351 (Ala. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). There, the disputed comments were, as follows:
 "There is no evidence before you that could give you any reason why you could think that Jeanette Kennedy shot Officer Sudduth as opposed to Mr. Dobard. The evidence is very clear. As far as I can see, and it is undisputed, that Percy Dobard shot and killed Officer Wayne Sudduth."
In holding that the petitioner's constitutional rights were not violated, the Alabama Supreme Court reasoned:
 "`[W]here there is the possibility that a prosecutor's comment could be understood by the jury as reference to failure of the defendant to testify, § 6 [Const. of Ala. of 1901] is violated.' Beecher v. State, 294 Ala. 674, 682, 320 So.2d 727, 734 (1975). Additionally, we noted in Beecher:
 "`Where the State's evidence does stand uncontradicted, the prosecutor does have the right to point this out to the jury. In that circumstance the prosecutor could say: "There has been no refutation of any of the evidence presented by the State;" or more simply, "The State's evidence stands uncontradicted," or other appropriate comment to like effect.'" Id.
 "We hold that the prosecutor's comments in question could not have been understood as being a reference to the defendant's failure to testify, but rather fall squarely within the approved bounds of Beecher."
Ex parte Dobard, 435 So.2d at 1359. See also Jackson v. State,414 So.2d 1014 (Ala.Cr.App. 1982).
Although it is generally held that a comment referring to the State's evidence as uncontradicted refers to the defendant's failure to testify, where the defendant himself is the only person who could or would have contradicted the evidence, e.g.,Williams v. State, 461 So.2d 852 (Ala. 1984), the comment in the case at bar does not fall within the prohibitive rule. For aught that appears in the record, the named informant was present during the entire transaction. Furthermore, the evidence reveals that other persons were present in Pittman's yard. Thus, there were others who could testify other than Pittman. There was no "virtual identification" of Pittman as the person who did not become a witness. The defendant was not mentioned nor was any reference made to the failure of anyone to give testimony from the witness stand. Williams v. State, supra. Accordingly, the motion for mistrial was properly denied.
Our consideration of the issues raised on appeal convinces us that the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur. *Page 794